## In re OSWEGATCHIE CHEMICAL PRODUCTS CORPORATION.

### Appeal of ABBOTT FACTORY, Inc.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

No. 108.

1. **Bankruptcy ⟐288(1)—Court may summarily determine validity of mortgage on land in trustee's possession.**

   Where real estate of a bankrupt is in possession of the trustee, the bankruptcy court has jurisdiction to determine in a summary proceeding the validity of a mortgage or other liens thereon.

2. **Vendor and purchaser ⟐260(1)—Vendor's lien creature of equity.**

   A vendor's lien, aside from statute, is purely a creature of equity, and must yield to a superior equity.

3. **Bankruptcy ⟐188(2)—Right of trustee held superior to vendor's lien.**

   The right of a trustee, vested under the Bankruptcy Act (Comp. St. §§ 9585–9656) with the rights of a creditor holding a lien by legal or equitable proceedings in real estate of the bankrupt in his possession, is superior to an implied vendor's lien, of which other creditors had no notice.

Appeal from the District Court of the United States for the Northern District of New York.

In the Matter of the Oswegatchie Chemical Products Corporation, bankrupt. The Abbott Factory, Inc., appeals from an order of the District Court denying a lien. Affirmed.

Certiorari denied 257 U. S. ——, 42 Sup. Ct. 464, 66 L. Ed. ——.

In January, 1916, the Abbott Factory, Inc., was, and still is, a corporation. It then owned certain land and the buildings thereon erected in Gouverneur, N. Y. The shares of the Factory, Inc., were all owned by J. Henry Abbott, his son, Arthur H. Abbott, and a cousin. At the time first above stated the bankrupt (Oswegatchie, etc., Company) was incorporated under the laws of Maine. To this newly formed concern the Abbott Factory conveyed the premises in Gouverneur for the expressed price of $8,000, of which $5,000 was paid in stock of Oswegatchie Company at par. The balance ($3,000) was to be paid in money, for which, however, no demand was made before October, 1918. Meanwhile the amount owing to the Factory for land and buildings was carried as an open account. J. Henry Abbott became the manager of Oswegatchie Company at a salary which remains in considerable part unpaid. His brother, Vasco P. Abbott, was the president, and his son Arthur H. Abbott, was secretary.

The Oswegatchie business was not successful, and on October 24, 1918, in pursuance of a resolution of the board of directors authorizing the same, a mortgage was executed upon the aforesaid land in Gouverneur by Oswegatchie Company to Abbott Factory for $3,000, with "interest thereon from January 1, 1916, being for a portion of the purchase price" of said land, etc. Mr. J. Henry Abbott had asked for this mortgage, and concerning it he testified that, before the above referred to "resolution was made, I didn't talk with any of the officers about the security we were seeking. I walked up and said I wanted a mortgage, and I got it. A couple of years passed, and I didn't say anything about the mortgage."

At the same meeting of October 24, 1918, the Oswegatchie directors authorized another (and junior) mortgage to be given to Mr. Abbott personally for the corporate indebtedness to him for salary and advances. Both mort-. gages were drawn by Mr. Arthur H. Abbott, who is an attorney as well as secretary to Oswegatchie Company, and he (as he testified) put the documents in his desk and forgot about them; they were not recorded until April 28, 1919. On September 24, 1919, Oswegatchie Company became an adjudicated bankrupt. Subsequently the trustee applied to have the above-recited mortgage for $3,000 to Abbott Factory declared null and void.

The motion was opposed because (1) the bankruptcy court was without power to make the order prayed for; (2) the mortgage was per se valid; (3) Abbott Factory had a vendor's lien upon the premises for the amount of the mortgage, and that lien was valid, if the mortgage was not. The court below (affirming the order of the referee) declared that the said mortgage was null and void, and so also was the alleged vendor's lien. It therefore directed the premises in question to be sold free and clear of the claim of said mortgage. From this order Abbott Factory, Inc., appealed.

Edmund J. Wager and Wager, Griffith & Wager, all of Utica, N. Y., for appellant.

Isaac Adler, of Rochester, N. Y., for respondent.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The property affected by the mortgage, and to which the asserted lien attached, was in the possession of the trustee in bankruptcy. Under such circumstances this court has held that the jurisdiction of the referee existed and could be asserted in a summary proceeding. In re Kellogg, 121 Féd. 333, 57 C. C. A. 547. The point is that the property was in the trustee's possession and required administration like other property; therefore no plenary suit was necessary, and this proceeding was within the exception pointed out in the Kellogg Case, and again in Weidhorn v. Levy, 253 U. S. 268, 40 Sup. Ct. 534, 64 L. Ed. 898.

The mortgage, considered alone and without any reference to the alleged vendor's lien, was plainly void under section 66 of the New York Stock Corporation Law (Consol. Laws, c. 59), which prevents any company "which shall have refused to pay any of its notes or other obligations, when due" from transferring "any of its property to any of its officers, directors or .stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash."

The Abbott Factory was a large shareholder in the bankrupt, and the bankrupt by the fall of 1918 had refused to pay its notes and other obligations; indeed, it was then plainly insolvent. Nor was any consideration paid in cash for the mortgage. Therefore the mortgage per se was, in the exact words of the statute, "void." Whether the mortgage could be given life because of the pre-existing lien, or whether said lien, if itself valid and existing, would or could be extinguished by ,a mortgage per se void, are apices juris, which need not be considered; for it is certainly true that, however good or bad the lien was, it was not improved by this mortgage, so that a negative answer to the query whether the vendor's lien was good for anything in October, 1918, will dispose of this litigation.

[2] The bankruptcy court, being a court of the United States, is bound to enforce a vendor's lien, if it is recognized by the proper state law. Slide, etc., Mines v. Seymour, 153 U. S. 509, 14 Sup. Ct. 842, 38 L. Ed. 802. Though it is said to be viewed with disfavor in Maroney v. Boyle, 141 N. Y. 462, 36 N. E. 511, 38 Am. St. Rep. 821, there can be no doubt that the lien exists and has often been recognized in the courts of New York. Hubbell v. Henrickson, 175 N. Y. 175, 67 N. E. 302, citing the early cases. And see Zeiser v. Cohn, 207 N. Y. 407, 101 N. E. 184, 47 L. R. A. (N. S.) 186, Ann. Cas. 1914C, 493. The general history of the vendor's lien, from Mackreth v. Symmons, 15 Ves. Jr. 329, downward, and its treatment in the courts of the United States, may be seen in Bayley v. Greenleaf, 7 Wheat. 46, 5 L. Ed. 393; Brown v. Gilman, 4 Wheat. 255, 4 L. Ed. 564, affirming 1 Mason, 191, Fed. Cas. No. 5,441; Minah, etc., Co. v. Briscoe, 89 Fed. 891, 32 C. C. A. 390, certiorari denied 175 U. S. 727, 20 Sup. Ct. 1023, 44 L. Ed. 339, and Venner v. Farmers', etc., Co., 90 Fed. 348, 33 C. C. A. 95.

From the authorities cited, and many others, there may be drawn the doctrine that the implied equitable right of the vendor to look for security in respect of his purchase price to the very land he conveyed is purely a creature of equity, being the equitable right or capacity to assert a lien, which is only useful when it has been judicially ascertained and declared. It follows that, whenever any other equity arises stronger than the vendor's equity, the latter must yield. When it comes to ascertaining the lien as here, the question always is (broadly stated) whether one set of equities outweighs the other. Of this the Minah and Venner Cases, supra, are excellent and extreme illustrations.

It is not here necessary to enter upon any discussion of mutual and conflicting equities, for concerning any matter to long known and so frequently litigated as a vendor's lien some definite rules always emerge, although, having regard to the manifold possibilities of human activity, it is never advisable even to attempt reduction of the whole subject to hard and fast legal regulations.

[3] One of these rules is that an implied vendor's lien cannot prevail as against intervening bona fide creditors without notice. This rule was early announced in Bayley v. Greenleaf, supra, and is as shortly as possible expressed in Dawson v. Girard, etc., Co., 27 Minn. 411, at 414, 8 N. W. 142, 144, where was applied "the well-settled rule that a vendor's lien upon real estate does not prevail against a creditor of the purchaser, whose claim accrued subsequently to the lien, and without notice of it."

All the creditors of this bankrupt necessarily became such after the creation of the alleged vendor's lien. The trustee in bankruptcy represents, and for both legal and equitable purposes is (so to speak) all those creditors and is possessed under the statute of all the rights and powers of a judgment creditor with an execution returned unsatisfied. In re Seward, etc., Co., 242 Fed. 225, 155 C. C. A. 65. It follows that as against the trustee in his representative capacity this vendor's lien, of which (by appellant's own evidence) no notice was given to anybody for nearly three years, cannot prevail.

The practice pursued below is regrettable. The subject was raised orally at a creditors' meeting; no issues were framed by petition and answer, as should have been done. It is to be hoped that such a procedure does not widely prevail. But the substance of the matter is before us and no objection was made in respect of the procedure in the District Court.

Discovering no error in the substance of the proceedings below, the order is affirmed, with costs.