STEGEMAN v. STEGEMAN.

CREDITORS' SUITS—VENDORS' LIENS—PRIORITY OF LIENS.

In a suit in aid of execution of a judgment on a promissory note given as part of the purchase price of a farm, the finding of the court below that the seller of the farm knew, at the time he accepted the note, that the cashier of a bank was making a loan to the purchaser to complete the purchase price on condition that the farm be deeded to him as security for said loan and as security for money owing to the bank from the purchaser, and that, therefore, the liens on the farm of the cashier and the bank are

Creditors' Suit, 15 C. J. § 155; 27 R. C. L. 584; 3 R. C. L. Supp. 1517.

superior to the lien created by the note, is affirmed, on appeal, by an equally divided court.

Appeal from Chippewa; Fead (Louis H.), J.      Submitted January 27, 1927.      (Docket No. 19.)      Resubmitted October 26, 1927.      Decided February 14, 1928.

Bill in aid of execution by John W. Stegeman against Albert A. Stegeman, Homer E. Bailey, and Chris. N. Wiger.      The Farmers & Merchants State Bank was permitted to intervene as a party defendant.      From a decree for defendants, plaintiff appeals.      Affirmed by an equally divided court.

*M. M. Larmonth* (*John W. Shine,* of counsel), for plaintiff.

*Warner & Sullivan,* for defendants Wiger and Farmers & Merchants State Bank.

BIRD, J.      The plaintiff recovered a judgment for $8,606.50 against defendant Homer E. Bailey on his promissory note given as part payment of the purchase price of a farm in Chippewa county.      The purchase price of the farm was $48,000.      An execution was levied on the land, and this bill was filed in aid of execution.      The defendant Wiger answered and claimed affirmative relief.      The Farmers & Merchants State Bank was permitted to intervene as a party defendant on its petition.      It appears that plaintiff, for some time, has had the title to the farm.      He conveyed it to his· brother, Albert A. Stegeman, in pursuance of a contract.      Albert A. Stegeman then sold it to Homer E. Bailey in exchange for an interest in an apartment house in Minneapolis, $10,000 in cash, and a promissory note for $8,000, and conveyed the title to defendant Wiger at Bailey's request, to secure the repayment of the $10,000 loan which he had made to

Bailey.    Albert A. Stegeman transferred the $8,000 note he received from Bailey to plaintiff to cancel his indebtedness for the farm.    The defendant bank claims that Bailey was indebted to it in a considerable amount for loans when Wiger loaned him the $10,000, and that it was agreed between Wiger, Bailey, and White, the bank's president, that Wiger should hold the title to secure the bank loans as well as his own. Out of these facts the question of priorities arose. Plaintiff claims, as holder of the note for purchase price, he is entitled to a vendor's lien.    Wiger claims a first lien for his loan, and the bank claims its loans to Bailey should be equally protected with Wiger's loan.    The trial court was of the opinion that the Wiger lien and the bank lien should take precedence over plaintiff's vendor's lien.    The plaintiff has appealed from that holding.

This State has recognized vendors' liens for purchase price of real estate from a very early date.    In *Michigan State Bank* v. *Hastings,* 1 Doug. 225, 258 (41 Am. Dec. 549), it makes use of the following language:

"Such liens exist independently of any express agreement, and courts of equity enforce them, on the principle that a person having gotten the estate of another, ought not in conscience, as between them, to be allowed to keep it, and not pay the consideration money."

It was observed in *Dunton* v. *Outhouse,* 64 Mich. 419, 425, that:

"The vendor's lien upon sale of real estate has always been recognized in this State; the earliest reported case being that of *Carroll* v. *Van Rensselaer,* Har. Ch. 225. The doctrine, generally stated, is that the vendor of land who has taken no security, although he has made an absolute deed and acknowledged the receipt of the purchase price, yet retains an equitable lien for the purchase money, unless there be an express or implied waiver and discharge of it, which will be enforced in

equity against the vendee, volunteers, and all others claiming under him with notice; that is, against all persons except *bona fide* purchasers without notice.

"The equity arises independent of contract, and it is therefore immaterial that the seller had no intention to reserve such a lien.     2 Sugd. Vend. & P. 675.     And if the purchaser alleges that the lien does not exist, for any reason, in a particular case, the burden is on him to show the circumstances which repel the presumption of its existence or rebut the equity."

See, also, *Biddle* v. *Biddle,* 202 Mich. 160, 165; *Lavin* v. *Lynch,* 203 Mich. 143 (2 A. L. R. 804); 2 Jones on Liens (3d Ed.), § 1094.

There is little doubt that Albert A. Stegeman had a vendor's lien on the land for the amount of his promissory note which he took as part payment of the farm.     The question then is whether plaintiff to whom the note was assigned may enforce the lien. The authorities are not in harmony as to his right, but the great weight of authority is that the lien follows the note.     Assignment of note given to secure purchase money of land carries with it the vendor's lien on the property.     *Kern* v. *Hazlerig,* 11 Ind. 443 (71 Am. Dec. 360); *Griffin* v. *Camack,* 36 Ala. 695 (76 Am. Dec. 344); *Hassell* v. *Hassell,* 129 Ala. 326 (29 South. 695); *Upland Land Co.* v. *Ginn,* 144 Ind. 434 (43 N. E. 443, 55 Am. St. Rep. 181); *State Bank of Iowa Falls* v. *Brown,* 142 Iowa, 190 (119 N. W. 81); *Honore's Ex'r* v. *Bakewell,* 6 B. Mon. (Ky.) 67 (36 Am. Rep. 493); *Sloan* v. *Campbell,* 71 Mo. 387; 39 Cyc. p. 1808; 27 R. C. L. p. 584.     We are of the opinion that under these authorities the vendor's lien followed the note and was enforceable in the hands of plaintiff, if no other equitable rights intervened.

The Bank's Claim.     There seems to be more than one reason why the contention of the bank cannot be sustained.     (*a*) It does not appear by the proofs that any consideration was passed to Bailey for the security. If there was no consideration for tacking the bank's

loans on to the Wiger loan, the bank's loans would certainly not be held to take precedence over plaintiff's vendor's lien. (b) It appears also that the loans to Bailey from the bank were antecedent debts. They were all owing at the time this deal was entered into, and this class of debts is not superior to a vendor's lien, especially when the bank officers knew, as they did in this case, of the note which Bailey had given to Stegeman. *Dunlap* v. *Burnett,* 5 Smedes & M. (Miss.) 702; *Shirley* v. *Sugar Refinery,* 2 Edw. Ch. (N. Y.) 505, 512. Plaintiff had no notice of this arrangement between Wiger, White, and Bailey. Neither had the brother, Albert A. We are of the opinion that the defendant bank has no rights that are superior to plaintiff's vendor's lien.

Wiger's Claim. Wiger is, undoubtedly, a mortgagee to the extent of his loan. He loaned this money to Bailey to pay on the farm. Had he been a *bona fide* mortgagee without notice of plaintiff's vendor's lien, his claim under the authorities would take precedence of the vendor's lien, but he was not such mortgagee. He knew Bailey was purchasing the farm and giving Stegeman a promissory note for $8,000 in part payment on the purchase price. He knew the note was not secured, and he must be presumed to have known that Stegeman would have a vendor's lien for the unsecured note of $8,000. But defendants say Albert A. Stegeman had notice that the conveyance to Wiger was to secure the Bailey loan for $10,000. He perhaps did, but knowledge as to how Bailey got the money with which to purchase the farm in part would not estop him from insisting on his vendor's lien. The vendor would waive nothing by such knowledge. The important question is, What notice did the mortgagee have? In this case it is conceded that the mortgagee knew of the $8,000 unsecured note. The rule of priority in such cases is:

"As a general rule, whether or not a vendor's lien takes precedence over a mortgage, deed of trust, or other conveyance given by the purchaser by way of security, depends upon whether the grantee takes such mortgage or other conveyance in good faith without notice of the existence of such lien, and for a valuable consideration." 39 Cyc. p. 1817, and authorities cited.

Equitable Features. Wiger was assisting Bailey to buy this valuable farm. He took a deed of the farm to secure his loan of $10,000. He knew of the unsecured note given to Stegeman before he made his loan. His security is ample even if plaintiff's vendor's lien is declared superior to his. If plaintiff's lien is declared to be inferior to Wiger's it leaves him without any security and forces him to take care of secured creditors in a large amount of indebtedness in order to make his own claim. This does not appear to us quite equitable.

We think the rights of the plaintiff are superior to those of the defendants, and the title from Stegeman to Wiger should be set aside to the extent of satisfying Stegeman's execution. Defendants should have 30 days from the filing of this opinion in which to make payment of Stegeman's claim, in default of which Stegeman should proceed with his execution and sell the farm or such part of it as is necessary to satisfy his claim. The plaintiff should be entitled to his costs.

FLANNIGAN, C. J., and WIEST, J., concurred with BIRD, J.

SHARPE, J. The record consists largely of concessions made by the counsel for the respective parties and statements made by them as to what certain witnesses, if present, would testify to. A proper understanding of the issues presented seems to necessitate a more extended statement of the undisputed facts.

241—Mich.—33.

The plaintiff held title to a part or all of the lands described in the bill of complaint as security for money loaned by him to his brother Albert. Negotiations were had looking to the exchange of these lands by Albert with defendant Bailey for his equity in an apartment house in Minneapolis. Some preliminary contracts were entered into. The difference in values was $18,000. Bailey agreed to pay $10,000 of this in cash, and to turn over to Albert certain cattle notes for the balance. He sought to make a loan of $10,000 from the defendant bank. He was at that time indebted to it in about $19,000. It declined to make the loan. He then sought to obtain it from the defendant Wiger, the cashier of the bank. The negotiations resulted in the visit of Wiger and Mr. White, the president of the bank, to Sault Ste. Marie, where the details were finally agreed upon in the office of plaintiff's attorney. Albert A. Stegeman was then present. Wiger there agreed to make the loan on condition that $15,000 of Bailey's indebtedness to the bank should also be secured, and to this Bailey assented. Discussion was had as to the way in which it should be arranged, and it was finally decided to have Stegeman deed directly to Wiger. It was understood, however, that later Wiger should deed to Bailey, who would then give a mortgage to secure the $25,000. On the return of Wiger and White to River Falls, Wisconsin, where they lived, Wiger sent a draft for $10,000 to a bank at Sault Ste. Marie, to be turned over

"upon receipt of a deed running to Mr. Wiger, on the lands and premises described in the bill of complaint filed in this cause, and an abstract showing good title, and a letter from Mr. Larmonth so stating."

Stegeman thereupon secured a deed from the plaintiff. The $10,000 was turned over by the bank and the deeds and abstracts sent to Wiger. Bailey gave Albert A. Stegeman his note for $8,000. In satis-

fying his indebtedness to the plaintiff, Albert indorsed to him this $8,000 note. Plaintiff brought action thereon, and obtained a judgment, on which execution was issued and levy made on the lands, to enforce collection of which this bill was filed.

The record largely consists of the statements of counsel, agreed upon as a statement of facts. Among them is the following:

"Albert A. Stegeman, the owner of the property, who made the conveyance, had knowledge of the conditions existing between the parties, and of the indebtedness of the defendant Bailey to the Farmers & Merchants Bank. The details between these parties were fully gone over between Albert A. Stegeman and the defendants Bailey and Wiger."

Mr. White, whose deposition was taken, testified:

"I had a conversation at the hotel with Mr. Albert Stegeman the afternoon before we left the Soo and he was telling me about this piece of land and how well located it was and that it was good security for anything that Mr. Wiger and the bank had coming from Mr. Bailey."

In view of this evidence, I do not think that the statement of Mr. Justice BIRD that "Plaintiff had no notice of this arrangement between Wiger, White, and Bailey. Neither had the brother, Albert A.," is warranted. Albert certainly was familiar with all the details of the deal.

That a vendor's lien may exist and be enforced in courts of equity in this State admits of no doubt. The right thus conferred is a creature of equity, founded upon the doctrine that a vendee should not be permitted to retain that which he has purchased from another without paying for it. It is implied as an incident of the purchase and sale. The right thereto may, however, be waived, and enforcement of it may be refused when any other equity is presented stronger than the vendor's right thereto. This exception to

the right of enforcement runs through nearly all of
the cases in which such a lien was considered.    In
*Palmer* v. *Sterling,* 41 Mich. 218, 220, a lien was said
to exist "where nothing is done to waive or lose it;"
in *Hiscock* v. *Norton,* 42 Mich. 320, 325, "unless cir-
cumstances are found which repel the presumption,"
and among such circumstances are said to be "the
formation of arrangements between the parties, which
suffice to make out that reliance was not placed on
any unwritten claim against the land;" in *Dunton* v.
*Outhouse,* 64 Mich. 419, 425, "unless there be an ex-
press or implied waiver and discharge of it."

In *Lyon* v. *Clark,* 132 Mich. 521, 524, after stating
its right of priority, it was said:

"The only limitation on this rule is that, if the cir-
cumstances would indicate a purpose on the part of
the vendor to waive his lien, it will not thereafter be
enforced."

In *Fisher* v. *Shropshire,* 147 U. S. 133, 143 (13 Sup.
Ct. 201), the court said:

"Undoubtedly, a lien of the character we are con-
sidering may be defeated if the grantor or vendor do
any act manifesting an intention not to rely on the
land for security; but this must be an act substantially
inconsistent with the continued existence of the lien,
and cannot be inferred from the mere fact that the
parties may not have contemplated the assertion of
the lien in the first instance."

In *Re Oswegatchie Chemical Products Corp.,* 279
Fed. 547, 549 (22 A. L. R. 1334), the court said:

"From the authorities cited, and many others, there
may be drawn the doctrine that the implied equitable
right of the vendor to look for security in respect of
his purchase price to the very land he conveyed is
purely a creature of equity, being the equitable right
or capacity to assert a lien, which is only useful when
it has been judicially ascertained and declared.    It
follows that, whenever any other equity arises stronger
than the vendor's equity, the latter must yield.    When

it comes to ascertaining the lien as here, the question always is (broadly stated) whether one set of equities outweighs the other."

In 39 Cyc. pp. 1826, 1827, it is said:

"The right of a vendor to a lien for purchase-money may be waived by him, without consideration, and without writing. A waiver of such lien may result not only from the provisions of the agreement of the parties as to the transaction, but from their acts, conduct, or declarations inconsistent with its retention and from which an intention to waive the lien may be implied."

And in 27 R. C. L. p. 586:

"Courts will not enforce it (a vendor's lien) to the extent of doing inequity to others, nor in cases where the conduct of the vendor has been such as to lead others to adopt a position upon the assumed absence of any such right so that they will suffer if it is asserted and sustained."

The reasoning of the foregoing leads me to conclude that, if Albert A. Stegeman were here claiming a lien, his right thereto would be denied. He well knew that Wiger hesitated before making the loan of $10,000, the proceeds of which he (Stegeman) received, and that such hesitation was because Bailey had not promptly paid the loans made to him by the bank of which Wiger was cashier, and the lands were in a State other than that in which he lived. Mr. White, the president of the bank, was assured by Stegeman that the land was "good security" for any loan that Wiger or the bank might make to Bailey. Had it been intimated by him that such loan would be subject to a lien he might claim for the $8,000, it is clear that it would not have been made. He was present at the conference, and it was at his suggestion that the deed, instead of a mortgage, was executed. In my opinion, the equities are all on the side of the de-

fendants and a waiver on the part of Albert A. Stegeman is established.

If Albert A. Stegeman had no right to a lien at the time the note was given, I do not think that a right thereto passed to plaintiff on its indorsement and delivery to him. A copy of the note does not appear in the record. His counsel, in stating the conceded facts, said that the note provided "that it should be paid for in cattle notes before a certain date." Such notes were not delivered. The extent to which this provision destroyed its negotiability (see 2 Comp. Laws 1915, § 6042) was not discussed by counsel, and I do not rest decision upon it. It does appear that plaintiff accepted this note in part payment of the indebtedness of his brother to him. While his counsel stated as a fact that he had no knowledge of the nature of his brother's deal with the defendants, I am impressed that this could not have been a fact. He is here represented by the same attorney in whose office the deal was consummated, and it is significant that the first proceeding taken was an action against Bailey on the note on which judgment was recovered.

The suit here brought is clearly one in the nature of a judgment creditor's bill. While in one of the paragraphs it is said "that the debt upon which this judgment was secured was for a portion of the purchase price of said land," there is no allegation that he thereby secured a lien thereon. The prayer for relief reads:

"1. That the said H. E. Bailey, C. N. Wiger and Albert A. Stegeman who are made party defendants to this bill may be required to make full and direct answer to the same.

"2. That the said lands may be determined to be and belong to H. E. Bailey and pretended claim title of C. N. Wiger may be set aside and held for naught.

"3. That the sheriff of the county of Chippewa be authorized to sell said lands under the execution heretofore issued in the case in which John W. Stegeman

is plaintiff and H. E. Bailey defendant and give a deed for the same free and clear of any and all claims of H. E. Bailey, C. N. Wiger or Albert A. Stegeman."

It is clear that no such claim was made upon the hearing. The trial court in his opinion said:

"In his brief, plaintiff says: 'The only real issue in the case is, Can the Farmers & Merchants State bank of River Falls, by virtue of a parol agreement between the bank, Wiger and Bailey, have a lien upon this land against the rights of an attaching creditor who had no notice whatever of the agreement.' "

Later, in the opinion the court said:

"In connection with the argument, plaintiff urges that his claim is for part of the purchase price of the premises, that he had no notice of the bank lien and that the bank gave no consideration for the creation of a lien in its favor. He does not point out in what manner these facts affect the legal phases and it is evident that they do not."

In his opening statement to the trial court, his counsel said:

"Plaintiff claims the right to sell this land, either subject to the Wiger mortgage of $10,000 with interest and other expenses added; or that the land be sold and he be considered as having an equal lien upon it by virtue of the fact that this was for the part of the purchase price of the land paid by Bailey, and, if there is any loss, that the loss be shared jointly by himself and Wiger."

In preparing the record for appeal to this court, his counsel has included therein "assignments of error." There is no provision therefor in either the statutes or rules. It is significant, however, that the words "vendor's lien" are not mentioned therein, nor do they contain any suggestion that the court erred in denying plaintiff the right to such a lien.

The trial court held that on foreclosure of the deed to Wiger, when treated as a mortgage, his $10,000

claim should be first paid; that the claim of the bank should be next paid, and that plaintiff should have a lien upon the balance. It is insisted that plaintiff's claim should take precedence over that of the bank. With this I cannot agree. Plaintiff held title to a part of these lands to secure an indebtedness owing to him by his brother Albert. He deeded the land to Albert in order to perfect his title and permit him to consummate his deal with Bailey. On the record as it then appeared, plaintiff had no lien on any of the lands included in the deed from Albert to Wiger. Albert indorsed to him the note he had received from Bailey in closing the deal. It mattered not to plaintiff whether Albert A. Stegeman deeded to Bailey and Bailey mortgaged to Wiger and the bank, or whether the plan pursued at Albert's suggestion (the giving of a deed from him to Wiger) was followed. Wiger would not have advanced the $10,000 which Bailey needed to complete the deal had not the bank's claim been secured as well as his own. In view of these facts, I cannot see any equitable reason for giving the plaintiff's claim priority over that of the bank. Plaintiff could have insisted on security from Albert when he released that which he held. He executed his deed without doing so. He thus permitted Albert to dispose of the land free and clear therefrom. The deed from Albert to Wiger passed all his title to the land. It is only as to Bailey and his creditors that it is treated as a mortgage. The acceptance of this security by the bank doubtless influenced it in not making any effort to enforce its claim. Plaintiff did not accept Bailey's note in reliance on the fact that he owned the property free and clear of incumbrance. An examination of the title would have disclosed that Bailey had no record title. Investigation would have revealed the fact that Wiger's title was in the nature of a mortgage to secure his claim and

that of the bank, and that any interest Bailey then had was subject thereto.     That the deed was not recorded as a mortgage in no way affected plaintiff's rights.     Even if plaintiff was without knowledge of the particulars of the deal, he certainly knew that one was being consummated.     Else why did he release the security he had and accept Bailey's note from his brother in lieu of such security?     He certainly knew that his brother was disposing of his real estate, and that he had accepted a note from Bailey in part payment thereof.

The decree is affirmed, with costs to appellees.

FELLOWS, CLARK, and MCDONALD, JJ., concurred with SHARPE, J.

NORTH, J.     While I do not agree with Justice BIRD that the plaintiff is entitled to recover as the holder of a vendor's lien, I concur with him in the result because the claims of Wiger and Stegeman are placed prior to the claim of the bank.     The equities of the case require this; and since there is ample property to satisfy the claims of both Wiger and Stegeman, it is of no practical importance which of these two has priority