GEORGE B. OWEN, Trustee, v. ELIZABETH D. HIGGINS, Appellant.

**Adjudication:** ISSUES INVOLVED: *Decree.* In an action to quiet title to land the holder of the legal title was a party, and answered, averring his ownership as trustee of the decedent, who plaintiff claimed, took the title to the land, under an oral agreement as security for the repayment of money advanced for payment of the land, and which had been fully paid, thereby entitling her to a deed, to which there was denial of payment of such money. The decree in such action confirmed title in the plaintiff, estopping and debarring the trustees from having or claiming title adverse to plaintiff, except whatever claim he might have or establish for any unpaid purchase money; such decree not being intended to affect or determine any right of the trustees to a legal lien on the land for money advanced for its purchase by his decedent for the plaintiff. *Held,* that such

decree was not a bar to an action by the trustee for the unpaid purchase money and to establish a vendor's lien, as a question which might have been adjudicated, since the decree did not determine that payment had been made.

VENDORS LIEN. Defendant, who was mortgagee of land, was a party to a suit by the mortgagor against the trustee of the property of the decedent who held the legal title as security for money advanced to pay for the land, to quiet her title to the land on the ground that the advances had been paid. Title was confirmed in the mortgagor, subject to any claim of the trustee for any unpaid purchase money. During the pendency of such suit defendant purchased the land from mortgage. Code, section 2924, provides that no vendor's lien shall be in force after conveyance by the vendee unless such lien is reserved in a conveyance, mortgage, or other instrument, duly acknowledged or recorded, or is made pending suit to enforce such lien, or the party purchasing had notice thereof. *Held*, in an action by the trustee to enforce the vendor's lien, that defendant took her grantor's interest subject to any lien that might be established, and section 2924, had no application, since the legal title was not in her grantor at the time of making the deed, and the decree confirming her grantor's title protected the vendor's lien.

Limitation of Actions: SUIT FOR PURCHASE PRICE OF LAND: *Accrual of Cause of Action.* Where, in an action by the trustee of the estate of a decedent to recover unpaid purchase money and to establish a vendor's lien on land, the title to which had been confirmed in another in an action to quiet title subject to the claim for such purchase money, the evidence shows that a deed was to be executed by plaitiff's decedent at any time on the payment of the amount advanced by decedent, the statutory limit not having elapsed since a demand for a deed and the entry of the decree confirming the title, it was not a bar to the action, since the decedent could not sue for the purchase price until such demand and the entry of such decree.

*Appeal from Linn District Court.*—HON. WILLIAM. G. THOMPSON, Judge.

SATURDAY, DECEMBER 22, 1900.

ACTION to recover the purchase price of land and establish a vendor's lien thereon. From a decree as prayed, the defendant Higgins appeals.—*Affirmed.*

*I. M. Earle* and *Rickel & Crocker* for appellant.

*Jamison & Smyth* and *W. F. Fitzgerald* for appellee.

LADD, J.—In a suit begun June 6, 1894, and affirmed in this court May 27, 1897, Estella D. Markley alleged in her petition ownership of the 80 acres of land in controversy, adverse possession for 12 years that plaintiff herein claimed interest therein, and asked that her title be quieted.  Owen answered that Daniel Louthan acquired title to said land by purchase from one Stephens in 1888, averred his ownership as trustee of the estate of Louthan, and, by way of cross petition prayed that his title be quieted.  Elizabeth D. Higgins, by petition of intervention, alleging the execution by Markley to her of a mortgage on the land February 27, 1893, and joined in the prayer of plaintiff's petition.  Mrs. Markley, in reply to the cross petition of Owen, denied that he had any interest in the land, and stated that she had purchased it of one Litten in 1876, R. D. Stephens advancing the money therefor and taking title in his own name as security, and that she immediately took possession and has since held it; that, in order to obtain more time, Louthan was induced to advance the purchase price to Stephens, and, under an oral agreement, took the title as security for the repayment of the money loaned; and that between 1888 and 1891 she paid Louthan in full, and became entitled to a deed.  For reply, Owen pleaded a general denial, the statute of limitations, and that, if there was ever such a contract as alleged, no part of the promised money had been paid.  The issue, then, fairly presented, was, whether Mrs. Markley was owner of the land.  The legal title was in Owen as trustee, and, whether held as security or as owner, unless the amount borrowed or the purchase price had been fully paid, it ought not to have been quieted in Mrs. Markley, as in either event he was authorized to retain it, as against her, until she had performed her agreement.  Nevertheless, the court entered a decree "that

the title  *  *  *  be and is confirmed to and in the plaintiff, and that defendant be debarred and is estopped from having or making claim of title thereto adverse to plaintiff, or right of possession thereof, except whatever claim he may have or establish for any unpaid purchase money; it being intended that this decree does not affect or determine any right that defendant may have to any legal lien upon said premises for money advanced for the purchase of said premises by said Daniel Louthan, deceased, for the plaintiff herein." This is, indeed, a novel decree, quieting title in one person when confessedly in another, and reserving to him holding the repudiated title "whatever claim he may have or establish for any unpaid purchase money." Nor is this clarified by the explanation which follows. The decree is contradictory and illogical, but its meaning may be ascertained when considered in connection with the pleadings. As the legal title was conceded to have been in Louthan, Mrs. Markley based her prayer for relief on having returned to him the money paid or loaned by him. But the court never passed on that issue, though squarely raised. This is put beyond question by the reservations contained in the decree. Whether paid or loaned, the amount was expressly reserved for future adjustment. It will not do to construe the decree as declaring payment to have been made, when it expressly declares to the contrary. If the title was held by Louthan as security or as owner, under an agreement to convey, the decree should have so stated, and the amount due might have been left open for future adjustment. We think this was all, in effect, that was intended, as the court declined to make a finding essential to any other conclusion. It decreed the land Mrs. Markley's, subject to whatever amount might be found due Owen as trustee. It is not a question of what might have been adjudicated, as argued by appellant, for the record conclusively shows that the issues involved were never determined. See 1 Van Fleet, Former Adjudication, section 184.

II. The decree, as entered, gives no intimation as to whether the land was held by Louthan as security for money advanced or as his own. It simply finds Mrs. Markley entitled to the land, subject to a lien for the amount due from her. That he purchased it from the executors of the estate of Stephens appears from the testimony of Smyth, and nothing in the record indicates that he held title other than as owner.

III. The appellant relies on a letter said to have been written by Louthan in June, 1891, as proving full payment for the land. The material part of this letter, following mention of other transactions, reads: "The 80 acres was a different thing. That is already paid for, and I am ready to make you a deed whenever you call for it." A copy of Mrs. Markley's letter, to which this was a response, had been preserved, and the original of Louthan, Markley testified, had been lost shortly before, while attending the state fair. But with rare foresight he had taken the precaution to have one Newburn make a copy of it also, and that was produced, containing the language quoted. Even with that, as seen, the court, in view of Markley's utter inability to give any definite information as to the time or manner of payment, declined in the original decree to say the purchase price had been paid. For this reason the petition for a new trial, when the portion of the letter set out was shown to have been inserted in copying, was denied. The court did not, as contended by the appellant, on that hearing adjudge the letter genuine, for that, admitting it to be spurious, this furnished no ground for changing the decree, which merely found Mrs. Markley entitled to the land upon the payment of any balance owing thereon. The evidence shows that Markley, without disclosing his purpose, employed another to insert the language set out, instead of this sentence, actually contained in Louthan's original letter: "The 80 acres is a different thing. You was to pay purchase money and interest and taxes, and, if there was nothing said as to my making deeds when part of the money was paid, I will agree

to that now." As changed, the original was burned by him after the preparation of the copy. There is no occasion for setting out the details of this transaction, as it is not denied by Markley. Because of the unsatisfactory character of the abstract prepared we have been compelled to go to the transcript, which includes that of the original hearing and on petition for new trial. Upon a careful examination of the entire record, we are convinced that Markley by false and fabricated testimony deliberately attempted, in behalf of his wife, to wrest from the estate of his deceased friend the 80 acres of land without paying one cent of the purchase price.

IV. The appellant asserts that any claim plaintiff may have is barred by the statute of limitations. The evidence with respect to the arrangement between Louthan and Markley is very meager. From all the circumstances disclosed, we are inclined to think that a deed was to be executed at any time upon the payment of the sum Louthan had expended with interest. Such is the inference to be drawn from Louthan's letter and other evidence introduced. If so, while Louthan might, after the lapse of a reasonable time without payment, have treated the agreement as abandoned, he was not in a situation to sue for the price, at least before a demand for a deed, and probably not until the entry of the decree. Either was within the period of limitation. See *Deming v. Haney,* 23 Iowa, 77.

V. The mortgage to Mrs. Higgins was executed February 27, 1893, while the legal title was in plaintiff; and she received her deed thereto September 25, 1894, during the pendency of the former suit, which terminated in a decree expressly reserving the right to assert the claim for purchase money. Clearly, then, she took Mrs. Markley's interest, subject to any lien that might be established, and section 2924 of the Code has no application. That contemplates the conveyance of the legal title by the vendee after he has received it from the vendor, and precludes the enforcement of the lien for the purchase price if

suit is pending at the time, unless reserved in the deed or other written instrument. Here a title was in Owen when the deed was executed to Mrs. Higgins, and afterwards, when quieted in Mrs. Markley, this lien was protected. We are content with the decree of the district court, and it is AF-FIRMED.