STATE BANK OF IOWA FALLS, Appellee, v. W. C. BROWN, Appellant.

**Waiver.** A waiver must be pleaded to constitute a defense to an action, and where it is not presented as an issue in the trial court it will not be considered on appeal.

**Vendors lien:** ENFORCEMENT: FORUM. A vendor has an implied lien for the purchase money upon property sold by him, which must be enforced in a court of equity and not at law; and where an amendment is filed in a law action asking the establishment and foreclosure of such a lien the cause should be transferred to equity.

Same: ASSIGNMENT OF VENDORS LIEN. A vendor's lien for the purchase price of property sold passes to his assignee as an incident of the debt, whether title to the property has passed or not.

Bills and notes: FRAUD: EVIDENCE. The statement of a vendor of town lots to the effect that the purchaser would not have to put any money in them, but that he would take his notes and he could resell the land and pay the notes from the proceeds, was not a fraud amounting to a defense to a suit on the notes, but a mere promise to be considered with the other evidence on the issue of fraud.

Fraud: STATEMENTS OF VALUE. Where the parties occupy no fiduciary relation the statements of a vendor of property as to its value are generally mere matters of opinion and are not actionable.

Same: RELIANCE UPON FALSE STATEMENTS. One who has purchased property, with full knowledge, or means of knowledge, of the truth or falsity of the grantors representations as to its value; and has given his notes in settlement of the purchase price, which he has several times renewed without objection, can not rely on the grantors statements of value in defense of an action on the notes.

Fraud: RESCISSION: WAIVER. One induced to purchase property by fraud must, upon discovery of the fraud or after the means of discovery are at hand, exercise his right to rescind within a reasonable time, and unless he does so he will be held to have waived this right.

*Appeal from Hardin District Court.*—HON. J. R. WHITAKER, Judge.

TUESDAY, JANUARY 12, 1909.

REHEARING DENIED SATURDAY, APRIL 10, 1909.

ORIGINALLY this was an action at law brought upon a promissory note made and executed by defendant to plaintiff on July 29, 1904. The action was aided by an attachment which was levied upon certain real estate. Thereafter plaintiff amended its petition, and, among other things, sought the establishment of a vendor's lien against certain property which it is claimed defendant purchased

from one Bliss, the amount of the note in suit representing a part of the purchase price. Thereafter, on plaintiff's motion, the case was transferred to the equity docket, and tried to the court, resulting in a judgment and decree for plaintiff as prayed, and defendant appeals.—*Affirmed.*

*J. H. Scales,* for appellant.

*Nagle & Nagle* and *F. M. Williams,* for appellee.

DEEMER, J.—On or about July 12, 1902, one B. B. Bliss held a public sale at Iowa Falls of some town lots in said city, whereat defendant was a bidder and buyer at and for the consideration of $4,402.50. As part of the purchase price, he executed and delivered to Bliss his note for the sum of $3,960, and, to secure the money with which to make the cash payment, he borrowed from plaintiff the sum of $442.50, executing his note therefor to the bank. By the terms of the contract of purchase, Bliss was to execute deeds and convey the premises to defendant upon full payment of the purchase price. On or about July 31, 1902, plaintiff purchased the $3,960 note from Bliss, and on March 7, 1903, the time of payment was extended and renewed, and three other notes then due from defendant to the bank were merged into the renewal note, making the amount thereof $5,000. On July 29, 1903, defendant again applied for an extension, and also for a settlement and accounting of the amount due on the purchase price of the lots. This was found to be $4,714.21, and defendant thereupon executed a note for that amount, and another note for $300, and also paid a small amount in cash in settlement of the $5,000 note. Thereafter defendant paid the $300 note, and on July 29, 1904, he again renewed the note for $4,712.21, executing the one now in suit for $4,632.30, being the balance due on the note at that time after deducting payments. Plaintiff claims that this note

represents the balance due of the purchase price of the lots, and asks that a vendor's lien for the amount thereof be established, and the lots sold to pay the amount due. Defendant claims that the note was and is without consideration, and that the same was obtained from him in pursuance of a fraudulent scheme on the part of the officers of plaintiff bank, with or without the collusion of Bliss, and for the purpose of defrauding him of his property.

It appears that Bliss laid out an addition to the city of Iowa Falls, and held a public auction of the lots in this addition. Bliss was a customer of plaintiff bank, and at the time he had his sale was largely indebted to the bank. H. C. Miller was at that time president of the bank and defendant was also a customer of the bank. Defendant is a farmer living but a short distance from the town, and not far from the lots which Bliss had laid out. Defendant had dealt with plaintiff bank through Miller for more than twenty-five years, and had talked over his business matters with him. After Bliss had platted his addition, and advertised his sale, Miller talked with defendant about the matter, and it is claimed said to him: "Do not miss the sale. There is a chance to make big money there. You do not have to have any money to invest in town property. You can't lose anything. You know I told you that you don't have to put up a dollar on this property. You can sell on contracts, taking small payments down, and we will take the paper. We don't need money and don't care for it." It appears that defendant attended the sale, and that, when some of the lots were put up and bids were being made, Miller said to Brown: "My God, Brown! what are you thinking about? Are you going to let that lot go at that price? It is worth double the money." Brown claims that, relying upon these matters and some other statements not necessary to be set forth, he bid upon the lots and afterwards entered into contracts for their purchase, giving the notes heretofore referred to as and for the purchase

price.    He claims, among other things, that he was in-
duced to do this by reason of Miller's statement that he
would not have to pay anything on the notes, but would
make the amount out of the sale of lots.    Most, if not all,
of these statements are denied by Miller, and it is claimed
that Brown relied upon his own judgment in the matter.
It is further shown that, at Miller's request, Brown's wife
signed the original note as surety.    It is practically ad-
mitted that Brown sold some of the lots purchased by him,
and that he received something like $1,500, and it is shown
by an amended abstract that since the trial Brown has sold
the remainder of the lots.    This matter is introduced into
the case for the purpose of showing that he, Brown, has
no right to prosecute the appeal.    No attempt was made by
Brown to rescind the sale, or to tender back the lots or
the purchase price thereof received by him before this ac-
tion was commenced, and, if there be any attempt at re-
scission at all, it is to be found in defendant's answer, or
certainly not earlier than March of the year 1905.    In
view of the showing made in appellee's abstract regarding
the sale of the lots by Brown after the decree was entered
in the trial court, which has not been denied by appellant,
it is doubtful if there is any right to further prosecute this
appeal; but, in view of the entire record, we have con-
cluded to consider some of the questions made on the theory
that defendant may have the right to have the question
of the establishment of a vendor's lien upon the lots de-
termined.    No objection was made by defendant to plain-
tiff's amendment to the petition in which is set forth the
facts regarding the sale of the real estate, and asking for the
establishment of a vendor's lien.    Indeed, the record does
not show that defendant ever filed an answer or any other
pleading thereto.

His counsel now argue, however, that plaintiff waived
its vendor's lien, if it ever had any, first, by taking a surety
on the note given for the purchase price; and second, by

attaching the real estate upon which the lien is prayed. As neither of these questions was presented by the issues or appear to have been submitted to the trial court, we do not consider them. Waiver to constitute a defense must be pleaded. *Kinkead v. McCormack Co.*, 106 Iowa, 222; *Murray v. Thiessen*, 114 Iowa, 657. There is a decided conflict in the decisions upon the question of the waiver of a vendor's lien by the acceptance of a surety upon a note given by the vendee for the purchase price. See cases cited in 29 Am. & Eng. Ency. (2d Ed.), 763, 764, 765. In this State it seems to be largely a question of intent to be derived from the acts and conduct of the parties. See *Gnash v. George*, 58 Iowa, 492; *Zook v. Thompson*, 111 Iowa, 463. However, we make no definite pronouncement upon the question at this time for reasons already suggested.

1. WAIVER.

Appellant contends that the trial court was in error in transferring the case to the equity calendar for trial. The amendment to the petition, to which no objections were filed, sought the establishment and foreclosure of a vendor's lien. This could not be done in an action at law, and there was no error in ordering a transfer upon the issues as they stood after the filing of the amendment to the petition. *Smith v. Bricker*, 86 Iowa, 285. Courts of equity, and not those of law, have jurisdiction to foreclose vendor's liens. Code, section 3427, and cases cited. Appellant contends, as we understand it, that courts of equity in this State do not recognize the right of a vendor to an implied lien for the purchase price and he relies upon *Porter v. Dubuque*, 20 Iowa, 441. That case does not in any manner determine the question. The opinion expressly states that the point is not decided. But it does hold that where the vendor retains the title, as Bliss did here, there is a vendor's lien. However, we now have a statute which expressly recognizes implied liens and numerous decisions

2. VENDOR'S LIEN: enforcement· forum.

construing this statute which hold that a vendor has an implied lien for the purchase money upon property sold by him. See *Hodgson v. Smith Bros.,* 136 Iowa, 515; *Johnson v. McGrew,* 42 Iowa, 555; *Jordan v. Wimer,* 45 Iowa, 65; *Zook v. Thompson, supra; Owen v. Higgins,* 113 Iowa, 735.

II. The next point made by appellant is that the lien, if one existed in favor of the vendor, did not pass to his assignee, the plaintiff herein. There is nothing in this proposition; for we have expressly held

3. SAME: assignment of vendor's lien.

that the lien in favor of a vendor for the payment of the purchase price passes to an assignee as an incident to the debt. *Paramore v. Nabers,* 42 Iowa, 659; *Rakestraw v. Hamilton,* 14 Iowa, 147; *Bills v. Mason,* 42 Iowa, 329; *Reynolds v. Morse,* 52 Iowa, 155. And this rule obtains no matter whether the title has passed or not. *Blair v. Marsh,* 8 Iowa, 144; *Bills v. Mason,* 42 Iowa, 330.

III. Finally, it is argued that there should have been no judgment for plaintiff because of the fraud perpetrated upon him by the officers of the bank acting either independently or in collusion with Bliss.

4. BILLS AND NOTES: fraud: evidence.

Defendant testified that he relied upon statements made by Miller to the effect that he "would not have to use any money, and the obligation would only be to sell the lots, and turn the proceeds over to him or to the bank until payment was made." Of course, this, if established, would not amount to a defense to the notes. *De Long v. Lee,* 73 Iowa, 53. Such statement, if made, may be considered upon the issues of fraud; but, standing alone, it does not constitute fraud, in that it amounts to nothing more than a promise.

The claimed fraud consists in statements made by Miller, the bank president. It is said that the day before the sale he asked defendant if he was not going to attend, and stated to him that he did not want to miss it,

that there was a chance to make good money there, and that it was bound to be the finest resident part of the city. It is also claimed that during the sale Miller urged defendant to bid upon the lots, saying they were dirt cheap, were worth more than was being bid, and that he, defendant, could lose nothing, as he might turn around and resell, and then pay the purchase price. We have already quoted some of the declarations said to have been made by Miller at the time of the sale. No relations of trust or confidence are shown between defendant and Miller, and Miller denies having made some of the statements testified to by defendant. Defendant was familiar with the lots, lived but a short distance away, and, as he said, relied upon the statements made by Miller that he would not have to pay the notes, but could meet them out of the proceeds of the sales thereof. Generally speaking, statements of the vendor as to the value of property he is offering for sale, being mere matters of opinion, are not regarded as actionable. *Bank v. Mentzer,* 125 Iowa, 101; *Bank v. Gates,* 114 Iowa, 323, and cases cited. An exception is made where the parties occupy fiduciary relations; but such relations are not shown here. The location of the lots was as well known to defendant as to Miller, and that it was bound to be the best residential part of the city and certain to be a profitable investment was a mere matter of opinion. Remembering that Brown testified squarely as to what he relied upon, we are in much doubt regarding the sufficiency of the testimony to show any fraud or deceit.

Moreover, there is no proof of collusion between Miller and Bliss. But, assuming for the purposes of the case that there was both fraud and collusion on the part of both Miller and Bliss in inducing defendant to purchase, we are constrained to hold that he elected to waive the fraud and to rely upon Miller's promise that he might pay the note out of the proceeds from the resale of the lots, which

5. FRAUD: statements of value.

promise, as we have said, did not constitute a fraud, and is not relied upon as a new promise based upon a sufficient consideration which might be considered as superseding the original promise as embodied in the note.

Moreover, it appears that defendant thrice renewed his note given for the purchase price of the property. Upon one occasion he had a full settlement of all his accounts with the bank. He sold lots which brought him something like $1,500, which was more than he paid for them. He knew or should have known, after he became the owner of these lots and was attempting and was in fact selling them, their value, and as to whether or not Miller had misrepresented their value. He knew of the location of the lots, and whether or not they were desirable for residential purposes. He made his purchase in July of the year 1902, and he did not attempt to rescind until in March of the year 1905. If he did not know of the alleged fraud perpetrated upon him long before that time it was due to his own fault and negligence.

6. SAME: reliance upon false statements.

It is an universal rule that, where one is induced to purchase property by fraud and deceit, he must, within a reasonable time after discovering the fraud, rescind the contract, and place the other party *in statu quo.* In other words, he has an election after discovering the fraud or after the means of knowledge are at hand to treat the contract as valid or to rescind, and, if he fails to act promptly and to rescind, he will be held to have waived his right to do so. *Moore v. Howe,* 115 Iowa, 62; *Bank v. Bank,* 122 Iowa, 737; *Stetson v. Investment Co.,* 104 Iowa, 393, and cases cited. Here the means for discovering the fraud were at hand, and, instead of availing himself thereof and ascertaining the true condition, or discovering the fraud and electing to rescind, he evidently relied upon the alleged promise that he might pay the note for the purchase price

7. FRAUD: rescission: waiver.

out of the sales of the lots purchased, and thus discharge his obligation. Moreover, it fully appears that after defendant knew of the fraud, or should have known thereof by the use of reasonable care and diligence, he settled his accounts with the bank, not only the note in suit, but other accounts as well, and secured at least three renewals thereof. In the absence of sufficient explanation, this constituted not only a waiver of the alleged fraud, but a final and complete settlement thereof. *Keyes v. Mann,* 63 Iowa, 560; *Aultman v. Wheeler,* 49 Iowa, 647.

The decree seems to be correct; and it is *affirmed.*

EVANS, C. J., and WEAVER, J., taking no part.