J. S. BAIN et al., Appellants, v. H. E. ULLERICH et al.,
Appellees.

MORTGAGES: Priority Over Attachment Lien. An attaching cred-
1  itor who seeks to have his attachment lien declared senior to
the lien of prior mortgage-secured negotiable notes must show
that such notes were without consideration. Especially is this
true when the mortgage is prior in record to the attachment
lien. In the absence of such evidence, the law will presume a
valuable consideration.

VENDOR AND PURCHASER: Waiver of Vendor's Lien. A ven-
2  dor waives his vendor's lien for unpaid purchase price (1) by
levying, two years after the sale, an attachment on the land
for damages for fraudulently inducing the conveyance, and
(2), with a petition of intervention on file asserting a superior
lien, by causing his attachment lien to be judicially confirmed,
and (3) by delaying assertion of any right to a vendor's lien
until shortly prior to the hearing on the petition of interven-
tion.

*Appeal from Linn District Court.*—F. F. DAWLEY, Judge.

APRIL 13, 1920.

REHEARING DENIED JULY 6, 1920.

ACTION at law for damages, aided by attachment. R.
Lord intervened, alleging in his petition that he was the
holder of a prior mortgage upon the attached property, and
asked that his rights thereunder be protected. Judgment
was entered in the main action as prayed, and the lien of
the attachment confirmed. The court also found that the
lien of intervener was prior and senior to the attachment
lien, and that plaintiffs were not entitled to a vendors' lien,
as alleged in their answer to petition of intervention.
Plaintiffs appeal.—*Affirmed.*

*Treichler & Treichler,* for appellants.

*Frank C. Byers,* for appellees.

STEVENS, J.—I.   We gather from the abstract and argument of counsel that, on or about October 6, 1916, the Cedar Rapids Floral Company, a corporation, conveyed

1. MORTGAGES:
priority over
attachment
lien.

Lots 9 and 10, Block 1, Geo. T. Hedges First Addition to Cedar Rapids, to Chester A. Pelser, and that; on September 5th, Bain Bros. Manufacturing Company, a corporation, conveyed Lot 8 in said addition to said Pelser.   The stock of the Cedar Rapids Floral Company was, at the time, owned by J. S. and B. L. Bain, who also owned the stock of the Bain Bros. Manufacturing Company.   On the 24th day of October, 1918, plaintiffs filed their petition in the office of the clerk of the district court of Linn County, alleging that the deeds conveying said above-described property to Pelser were obtained by fraud, and demanding judgment against them for $35,000.   The record discloses only the name of J. S. Bain *et al.* as plaintiffs, but we assume that B. L. Bain joined in bringing suit for damages.   A writ of attachment was issued therein, and levied upon all of the above-described real estate on the 24th day of October, 1918, and, on March 26, 1919, judgment was entered against Ullerich and Pelser for $35,000, and the lien of the attachment established and confirmed.   On February 7, 1919, R. Lord filed a petition of intervention in said cause, alleging that, on or about November 12, 1917, Pelser conveyed Lots 9 and 10 to him by warranty deed, and, on September 16, Clarence L. Atwood, grantee of Pelser, conveyed Lot 8 by quitclaim deed to him.   The consideration expressed in the warranty deed is $1.00 and other valuable consideration, and in the quitclaim deed, $250.

On April 30, 1919, intervener, by amendment to his petition of intervention, alleged that the said deeds conveying Lots 8, 9, and 10 to him were, in fact, mortgages, executed to secure the payment of a note of $5,000, executed by de-

fendants to him on November 16, 1917, payable February 1, 1918. Intervener prayed that his rights be preserved, and that his lien be established as superior to the lien of plaintiff's attachment.

Plaintiffs, for answer to defendant's petition of intervention, denied the execution of the deeds from Pelser and Atwood to intervener, and averred that the deeds conveying the lots to Pelser were procured by fraud; that the deeds to intervener were executed without consideration, with notice of the fraud perpetrated upon plaintiff by defendants in the original transaction; and that the lien of the deeds was junior to vendors' lien. Intervener, for reply, denied the allegations of plaintiffs' answer to the petition of intervention, and pleaded a waiver by plaintiffs of their alleged vendors' lien.

The court found that the deeds to intervener are, in fact, mortgages given to secure the payment of $5,000 and interest; that same were executed prior to the levy of the attachment; and that the lien thereof is superior and prior to the judgment and attachment liens of plaintiffs; and that they were not entitled to a vendors' lien. As indicated, plaintiffs do not allege or claim fraud in the conveyance of the lots to Lord, but only that same was executed without consideration. No evidence was offered by either party as to the consideration for the $5,000 note, but intervener testified that the deeds were executed solely for the purpose of securing the payment thereof.

Counsel for appellants contends: (1) That the conveyance of the lots to Pelser was procured by fraud; that the burden rested upon intervener to prove that the note and deeds, which will hereafter be referred to as mortgages, were executed for a valuable consideration, without notice, actual or constructive, of such fraud; (2) that plaintiffs had a vendors' lien on said lots, which was prior and senior to the lien of said mortgages. We will dispose of the foregoing propositions in the order stated. The grounds alleged in plaintiffs' petition for an attachment were nonresidence of defendants, and that the debt sued on is due for property

obtained under false pretenses. In other words, the attach-
ment was procured and issued under Code Section 3878,
and not Code Section 3914, relating to vendors. Whether
a different situation would be presented if plaintiffs had
caused a specific attachment to be levied under Section
3914, we need not determine. Plaintiffs had two remedies
for the fraud perpetrated upon them: They could either
rescind the contract, and ask a cancellation of the deed
to Pelser, or ratify the conveyance, and sue for damages.
They elected to pursue the latter. Both conveyances to
intervener were executed long prior to the institution of
plaintiffs' suit for damages and the levy of the writ of
attachment; so that, in point of time, the lien of intervener
is prior to plaintiffs' attachment lien. We do not perceive
in exactly what manner the fraud practiced upon plaintiffs
by Pelser in procuring the deeds from the Floral Company
and Bain Bros. Manufacturing Company becomes material
in the controversy between plaintiffs and intervener. Plain-
tiffs' rights under the attachment are the same as those of
any other general creditor. It is not alleged or claimed that
the deeds or note for $5,000 were executed for a fraudulent
purpose, but only without consideration. None of the au-
thorities cited by counsel sustain their contention that the
burden of proving that the mortgages were executed for
a valuable consideration, without actual or constructive
notice of the fraud inducing the conveyance of the lots to
Pelser, rested upon intervener. We will not attempt to
distinguish all of the cases cited, but desire to call particu-
lar attention to the following:

In *Robertson v. United States Livestock Co.*, 164 Iowa
230, plaintiff, in his petition, prayed the rescission and can-
cellation of a deed conveying certain lots in DeSoto, Iowa,
to defendant, upon the ground that same was procured by
fraud. Prior to the commencement of said suit, the defend-
ant executed a note to J. S. Smith and C. M. Thompson,
officers and members of said corporation, who transferred
the same to the Live Stock National Bank of Omaha, Neb-
raska, which intervened in said action, alleging that it

acquired said note for a valuable consideration, before maturity, without notice of any infirmities therein. A decree was entered in the court below, canceling the conveyance and dismissing intervener's petition, and intervener appealed. This court held that, as Thompson and Smith, the payees named in said note, were officers and members of the corporation, they must have had notice of the fraud, and that, as the mortgage had its inception in fraud, the burden rested upon intervener to show that it obtained the same in good faith, for a valuable consideration, before maturity, and without notice thereof. As stated, plaintiff in the above case elected to rescind, and have a cancellation of the conveyance, instead of ratifying the same and pursuing a remedy at law for damages.

The decision of the Supreme Court of Nebraska in *Southwick v. Reynolds,* 99 Neb. 393 (156 N. W. 775), does not aid plaintiffs. Plaintiff in that case was the assignee of an unrecorded contract for the purchase of real estate, on which the assignor had, prior to the assignment of said contract, executed a mortgage to the Great Western Commission Company, which mortgage was duly recorded. The defendants, assignors of the contract, defaulted, and judgment was entered against them. The commission company, however, filed a cross-petition, setting up its note and mortgage, and asked that the lien thereof be established as prior and senior to plaintiff's unrecorded lien. The court held that the burden was upon cross-petitioner to prove that its mortgage was executed for a valid consideration, without notice, actual or constructive, of the prior unrecorded contract, and that the usual presumption under the negotiable instrument law that the note was executed for a valuable consideration did not obtain. Apparently, the situation of the parties in the above case and in the case at bar is reversed. The lien of the intervener herein is admittedly, in point of time, prior to the attachment lien of plaintiffs. In other words, in the cited case, cross-petitioner was seeking to have the lien of a recorded mortgage; whereas, in the case at bar, plaintiffs are asking to have their attach-

ment lien declared senior to the prior recorded lien of in-
tervener.  Other cases cited are not more favorable to ap-
pellants' contention than the two above referred to.  By
electing to prosecute a suit for damages, instead of rescind-
ing and asking the cancellation of the deeds to Pelser,
plaintiffs ratified the transaction, and confirmed the title
in defendants.

The lien of plaintiffs' attachment covered only the in-
terest of Pelser in the property levied upon, and would be
subject to a prior unrecorded mortgage. *Hamm Brewing
Co. v. Flagstad,* 182 Iowa 826.  The mortgages in contro-
versy were, however, executed and recorded prior to the
levy of the attachment.  Every negotiable instrument is
deemed *prima facie* to have been executed for a valuable
consideration (Section 3060-a24, Supplement to Code 1913) ;
and the burden clearly rested upon plaintiff, in seeking to
have an attachment lien declared senior to the lien of a
prior recorded mortgage, to prove that same was obtained
without consideration.  We find nothing in the record tend-
ing in any way to indicate that the $5,000 note and the
instruments executed to secure the same were without con-
sideration; indeed, no evidence was offered upon this point.

II.  The only reference in any of the pleadings filed on
behalf of plaintiffs to a vendors' lien is in their answer to
the petition of intervention, and is as follows:

2. VENDOR AND
PURCHASER:
waiver of
vendor's lien.

"And the intervener, if he has any claim,
the same is junior and inferior to plaintiffs'
lien as vendor.  Wherefore, plaintiffs ask, in
addition to the prayer in their original pe-
tition, that plaintiffs' lien as vendor be established in and
to said described lots, and that, whatever interest the inter-
vener may have therein, that the same be held junior and in-
ferior to plaintiffs' lien thereon."

The pleading from which the above extract is taken was
filed March 15, 1919, 11 days before judgment was entered
in the main case.  No claim to a vendors' lien was asserted
in plaintiffs' original petition against the defendants, and,

so far as appears in the record, none has been asserted thereto, except as stated above.

Intervener, in his reply to plaintiffs' answer to the petition of intervention, alleged that they have waived their right, if any they ever had, to a vendors' lien, and contends in argument that they have blended the purchase price of the land in the main action with other considerations, so that the precise amount thereof cannot be ascertained, and that they are not, therefore, entitled to a vendors' lien. Section 2924 of the Code, providing for a vendors' lien, is as follows:

"No vendor's lien for unpaid purchase money shall be enforced in any court of this state after a conveyance by the vendee, unless such lien is reserved by conveyance, mortgage or other instrument duly acknowledged and recorded, or unless such conveyance by the vendee is made after suit by the vendor, his executor or assigns to enforce such lien. But nothing herein shall be construed to deprive a vendor of any remedy now existing against conveyance procured through the fraud or collusion of the vendees therein, or persons purchasing of such vendees with notice of such fraud or lien."

As early as *Allen v. Loring,* 34 Iowa 499, this court held that a vendor's lien is not based upon contract, is not an equitable mortgage or resulting trust, but a mere equity. In that case, the court said:

"We need not discuss the question whether the assignees of an obligation given for real estate have the same right to enforce a vendor's lien as the payee and vendor himself has; because, in our view of the case, if Clemens, himself, was seeking to enforce his vendor's lien, as against an attaching creditor without notice of it, his right must be denied. And this, upon the doctrine as stated by this court in the case of *Porter v. City of Dubuque,* 20 Iowa 440. It is there said that the lien of a vendor is not based upon contract; nor is it an equitable mortgage or resulting trust, but a mere equity. It is but a naked equity, raised and administered by courts, and which will be enforced or denied,

even between the parties, where no counter equity arises, as the particular case may seem to demand. But it is never allowed to override or take priority of equities or rights of third persons, which have attached in ignorance of such vendor's equity. It is not, in this respect, like a mortgage, or any other lien created by express contract, or even by statute."

Substantially the same language was used by the court in *Spindler v. Iowa & O. S. L. R. Co.*, 173 Iowa 348. In the last-cited case, the court held that:

"A waiver of a vendor's lien may be found from any conduct on the part of the vendor which shows that he did not rely upon the lien, or has abandoned it; and this may result from a failure to assert the same within a reasonable time."

The mere commencement of an action for damages, aided by attachment, would not, however, operate as a waiver of the right to enforce a vendor's lien. *Patterson v. Linder*, 14 Iowa 414; *Stein v. McAuley*, 147 Iowa 630. · As already stated, the lots in question were conveyed to the defendant Pelser by the Cedar Rapids Floral Company and Bain Bros. Manufacturing Company, and not by the plaintiffs herein. Whether this fact alone, as plaintiffs were the owners of all the stock of the said corporations, would prevent them from asserting a vendor's lien, we need not determine; but it is significant that plaintiffs permitted judgment to be entered in the main action with knowledge of plaintiffs' claim, without asserting therein, as against the defendants, some claim to a vendor's lien, or taking some steps to establish and enforce the same.

It is alleged in plaintiffs' petition that the lots in question were worth in the neighborhood of $18,000, and that the judgment against defendants is in amount almost double the value of the lots. Plaintiffs brought their suit for damages, aided by attachment, about two years after the transactions complained of were consummated. Judgment was not entered for several months thereafter, and yet plaintiffs have taken no steps to enforce a vendor's lien

against the lots, except as above stated; and we think they should, upon the record before us, be held to have abandoned and waiv,ed any right they may have had to vendor's lien, as against the rights of intervener.  See, also, *Todd v. Davey*, 60 Iowa 532; *Owen v. Higgins,* 113 Iowa 735; *Kretzinger v. Emering,* 169 Iowa 59.  Assuming, further, without deciding, that plaintiffs might, under the issues and the prior holdings of this court, in the absence of waiver, be entitled to a vendor's lien upon the lots, it would be impossible for the court, upon the record, to determine the precise amount for which a lien should be established, and for this reason, the right thereto must be denied.  *Erickson v. Smith,* 79 Iowa 374; *Smith v. Dayton,* 94 Iowa 102.

Other questions discussed by counsel bear, either directly or indirectly, upon the propositions already considered, and do not merit separate consideration.  It follows that the judgment of the court below is right, and must be—
*Affirmed.*

Weaver, C. J., Ladd and Gaynor, JJ., concur.