**Donald A. BOECK and Caroline M. Boeck, Plaintiffs,**

v.

**LOGAN 480 DAIRY FARM, a Limited Partnership; California Ranch Properties, Inc.; J.B. Marcus, Inc.; James Schaefer; Sunshine Investments; and First National Bank of Missouri Valley, Defendants.**

Civ. No. 83–61–W.

United States District Court, S.D. Iowa, W.D.

Jan. 2, 1985.

Thomas H. Dahlk, Omaha, Neb., James A. Campbell, Council Bluffs, Iowa, for plaintiffs.

Gregory Barntsen, Council Bluffs, Iowa, Dwight W. James, Des Moines, Iowa, Kirk S. Blecha, Omaha, Neb., Ronald L. Comes, Council Bluffs, Iowa, for defendants.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter comes before the Court on defendants'[1] motions to dismiss and for summary judgment. A hearing was held on September 5, 1984, at Council Bluffs, Iowa, at which all parties were present. After carefully considering the briefs and oral arguments of the parties, this Court grants each motion in part and denies it in part.

**1.** Defendant First National Bank did not take part in either of the motions.

**2.** Defendants were successful in setting aside plaintiffs' earlier notice of forfeiture because it

## I. Background.

On December 29, 1981, the plaintiffs and Defendant Logan 480 Dairy Farm entered into a purchase agreement for plaintiffs' dairy farm for a total purchase price of $1,310,000. The sale included plaintiffs' livestock, fixtures, equipment, personal residence, buildings, real estate, grain, hay, growing crops, inventory and all other assets used in plaintiffs' dairy farming business. In exchange for the dairy farm, Defendant Logan 480, the buyer, executed two short-term promissory notes, one for approximately $107,000 bearing 13% interest due on June 1, 1982 and another for $155,000 bearing 11% interest payable annually with full payment on the note due July 15, 1984. The purchase agreement also provided for the assuming of two debt obligations, the first being the payment of $355,038.50 which would be made in installments of approximately $4,000 per month continuing until July 1, 2013 and the other obligation being a $693,000 payment with a fixed schedule of interest and payments over a period of 30 years. The monthly payments for these installment contracts were to be derived from receipts from Defendant Logan 480's operation of the dairy farm sold by the plaintiffs.

Pursuant to the purchase agreement, plaintiffs were granted a purchase money security interest in the livestock, fixtures, equipment, buildings and crops which were sold to Defendant Logan 480. The purchase agreement provided that the security interest would lapse when the $155,000 promissory note was paid as scheduled. Some of the equipment was subject to a pre-existing security interest granted by plaintiffs to Defendant First National Bank of Missouri Valley.

Plaintiffs claim that Defendant Logan 480 failed to make required payments pursuant to their agreement. As a result, plaintiffs, subsequent to the filing of this action, on September 19, 1983, filed a notice of forfeiture.[2] Defendant Logan 480 re-

did not properly apprise defendants of what action would be necessary on its part to avoid forfeiture.

sponded by filing a motion for a temporary injunction which was denied. On October 24, 1983, plaintiffs filed for record the notice of forfeiture, which when filed and recorded, constituted notice to Defendant Logan of the forfeiture and cancellation of the real estate contract under Iowa law.

In the action before this Court plaintiffs claim defendants violated provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act, the Iowa Uniform Securities Act, as well as common law fraud and deceit, breach of indemnity agreement, negligent misrepresentations, breach of contract against defendant bank, and tortious interference with contract against defendant bank.

## II. Defendants' Motion to Dismiss.

Plaintiffs claim that the "sale" of their farm to defendants was in reality an investment by plaintiffs in defendant's dairy farm, and that the transaction was therefore covered by the Securities Act of 1933, 15 U.S.C. Section 77b, *et seq.*, the Securities Exchange Act of 1934, 15 U.S.C. Section 78c, *et seq.*, and the Iowa Uniform Securities Act, *Iowa Code* Chapter 502 (1983). According to plaintiffs, they were "solicited to enter into an agreement with Defendant Logan 480 Dairy Farm for the sale of the land and the dairy farm." The sale of plaintiffs' property to defendants was contingent upon the simultaneous sale of a limited partner interest in a limited partnership. Plaintiffs claim that the entire transaction can be characterized as an "offering" and that in connection with this "offering," defendant's promissory notes and installment contracts fall under the category of "notes" and "evidence of indebtedness" or "investment contracts" which are all covered under the definition of "securities" in the above securities acts.[3]

In its motion to dismiss, defendants argue that the disputed transaction was merely a sale and not an investment in securities by plaintiffs. According to defendants, while circuit courts have found the Supreme Court's test for determining whether a security exists as set out in *S.E.C. v. W.J. Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), to be inapplicable to note transactions such as the ones in dispute here, the Eighth Circuit has not taken a position on this issue. Defendants state the tests used in other circuits indicate that the transaction here did not involve a type of investment that is covered by the federal and Iowa securities laws.

Courts, in giving effect to congressional concern for investors, should examine circumstances of a subject transaction in order to determine whether said transaction was in "economic reality" entered into for investment purposes, or was primarily commercial in nature and therefore beyond the scope of the securities law. *United Housing and Fdn. v. Forman*, 421 U.S. 837, 852–53, 95 S.Ct. 2051, 2060–61, 44 L.Ed.2d 621 (1975); *Briggs v. Sterner*, 529 F.Supp. 1155, 1167 (S.D.Iowa 1981). The key to deciding whether a particular investment is a security is flexibility or an ability "to meet the countless and variable schemes devised by those who seek the use of the money of others on the premise of profits." *Tcherepnin v. Knight*, 389 U.S. 332, 338, 88 S.Ct. 548, 554, 19 L.Ed.2d 564 (1967); *Briggs v. Sterner, supra*, at 1168.

As already pointed out, other circuits have utilized different tests for determining whether a security exists. The most stringent guidelines used for finding that a security does not exist is that of the Second Circuit, which instructs courts to compare transactions to a set of concrete examples and directs that all ambiguous cases (or cases that do not have a "strong family resemblance" to the examples) be resolved in favor of coverage. These examples include:

> ... the note delivered in consumer financing, the note secured by a mortgage

---

**3.** The Court notes that the definition of "securities" in the 1933 and 1934 acts, 15 U.S.C. § 77b(1) and § 78c(a)(10), have been viewed by courts to be functional equivalents. *See United Housing and Fdn. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975).

on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a "character" loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open account debt incurred in the ordinary course of business.... *Exchange Nat'l Bank v. Touche, Ross & Co.,* 544 F.2d 1126, 1138 (2d Cir.1976).

■ In reviewing the agreement between the parties, this Court finds that defendant has met the Second Circuit test of "strong family resemblance" to the examples set forth above. It is evident that plaintiffs wanted to sell their farm for cash, but because defendants could not find that feasible, the parties agreed at arms-length to the above-described transaction. Further, since the agreement provided for such things as having the buyer insure the property, allowing the seller a security interest in the property, prohibiting the buyers from removing any of the property until the promissory notes were paid, requiring the seller to deliver the buyer a warranty deed, allowing for both forfeiture and foreclosure, and requiring the sellers to give the buyers advice as to how to run the farm, this Court views their agreement as being in "economic reality" a sale of a dairy business that provided for consumer financing and not an investment in securities. *See generally, Altman v. Knight,* 431 F.Supp. 309 (S.D.N.Y.1977).

Moreover, when the facts and circumstances here are examined under the Fifth Circuit commercial/investment approach which states that promissory notes containing terms indicative of a commercial lending arrangement (*e.g.,* collateralized, short-term, proceeds used for operational expenses, repayable at a fixed rate of interest) are not considered "securities," *see National Bank of Commerce v. All American Assurance Co.,* 583 F.2d 1295 (5th Cir.1978), this Court is not persuaded that there are "securities" in this case because the loan was collateralized, and it was repayable at a fixed rate of interest. Also, under the Ninth Circuit risk capital approach which states that "securities" are notes representing loans of risk capital, while those subject to only the normal risks incident to commercial lending are not, *see Great Western Bank & Trust Co. v. Kotz,* 532 F.2d 1252 (9th Cir.1976), this Court finds that this is not an investment because it is apparent that the risks involved in the transaction in dispute cannot be found to be more than normal risks, considering the fact that the loan agreement provided for such assurances to plaintiffs as a security interest as well as a right of forfeiture and foreclosure.

While the affidavits submitted by both parties indicate that there is a factual dispute over whether defendants told plaintiffs that the transaction was actually an investment in securities, this Court does not find this dispute dispositive of the issue, since the "economic realities" of the transaction indicate that this was a commercial endeavor. *See Gordon v. Terry,* 684 F.2d 736 (11th Cir.1982). Also, this Court is not persuaded by plaintiff's argument that the provision in the agreement making the transaction contingent on the simultaneous sale of a limited partnership is evidence of plaintiffs' investment in securities, since plaintiffs gained nothing from the structure of the business that owned the farm and plaintiffs did not expect any increase or decrease in the agreed value they would receive according to the profits of the limited partnership. Instead, the provision appears to be an avenue of relief available to plaintiffs in the event the defendants could not finance the purchase. Finally, the Court is unpersuaded by plaintiffs' argument that the fact plaintiffs would not receive their monthly payments unless defendants were a competent and profitable management was evidence of investment in "securites," since in commercial settings, it is common for payments to a seller to be dependent on a buyer's success. *See generally, C.N.S. Enterprises, Inc. v. G & G Enterprises,* 508 F.2d 1354 (7th Cir.1975).

Even if this Court applies the *Howey* test as plaintiffs urge, a security still cannot be

found with respect to the two promissory notes and two debt obligations. Under *Howey*, a security is (1) an investment (2) in a common venture (3) with a reasonable expectation of profits (4) to be derived from the entrepreneurial or managerial efforts of others. *Id.*, 328 U.S. at 301, 66 S.Ct. at 1104. As pointed out by the Eighth Circuit in *Kansas State Bank of Holton v. Citizens Bank of Windsor*, 737 F.2d 1490, 1495 (8th Cir.1984), the presence of an investment presents the task of distinguishing investments from commercial transactions and therefore incorporates the same factors identified in the Second, Fifth and Ninth Circuit approaches (as discussed above). Furthermore, while it is true that some cases, such as *Briggs v. Sterner*, have found a fixed return to satisfy the third element of the *Howey* test, which requires the transaction must involve a reasonable expectation of profit, this Court believes that the *Kansas State Bank's* finding that a fixed return does not satisfy that element controlling here, since other aspects of the transaction make it apparent that this was a sale. Further, it is far from clear that the profits were to be derived from the entrepreneurial and managerial efforts of others when considering that plaintiffs had the power to forfeit or foreclose the real estate agreement and the agreement required plaintiffs to give advice to defendants on the running of the farm.

Since the Iowa Uniform Securities Act's definition of "security" is similar to that used by the Securities Act of 1933 and the Securities Exchange Act of 1934, the Court finds that for the above reasons, plaintiffs' claims pursuant to the Iowa Uniform Securities Act should also be dismissed. *See* Iowa Code Section 502.102(12) (1983); *see also Briggs v. Sterner, supra.*

■ With respect to defendants' motion to dismiss plaintiffs' RICO claim, the court, after reviewing plaintiffs' complaint, finds that plaintiffs' allegations of mail and wire fraud are not dependent upon plaintiffs' securities claims and are sufficient to be considered "patterns of racketeering activity." *See United States v. Karas*, 624 F.2d 500 (4th Cir.1980). Next, the court considers defendants' argument that the complaint fails to allege the plaintiffs have suffered an injury "by reason of a violation of section 1962 * * *." In *Alexander Grant & Co., v. Tiffany Industries*, 742 F.2d 408 (8th Cir.1984), the Court of Appeals for the Eighth Circuit was faced with a complaint that did not simply allege injury from the underlying predicate acts. Instead, the complaint stated that Tiffany was conducted through a pattern of mail and wire fraud that enabled it to remain in business, and as a result of this extended life, plaintiff continued to provide its services to Tiffany for a greater time than it would have had the fraud not occurred. This also increased the harm resulting to plaintiff's business reputation. The court concluded that these allegations sufficiently plead an injury "by reason of" a RICO violation. *Id.*, at 413. In this case, however, there is no specific allegation of injury, nor is there any allegations that would allow this court to find such a claim. As a result, plaintiffs' RICO claim shall be dismissed unless plaintiffs amend their complaint to comply with the above discussion concerning racketeering enterprise injury. Finally, this court, cognizant of the prejudicial problems that can occur in a jury trial where a RICO claim is at issue, will consider a motion to sever the RICO claim from the rest of plaintiffs' remaining claims and have a trial on the RICO count after a trial on plaintiffs' remaining claims.

### III. Defendants' Motion for Summary Judgment.

In their motion for summary judgment, defendants claim that plaintiffs' forfeiture of the real estate contract precludes plaintiffs under the doctrine of election of remedies from bringing this action against defendants. The plaintiffs, on the other hand, state that their forfeiture of the real estate contract and the return of the farm should be viewed as only mitigating damages and that it did not bar them from recovering on noncontractual claims.

■ Chapter 656 of the Iowa Code provides for the forfeiture of real estate contracts. While the statutory right to forfeiture is similar to the doctrine of rescission in that they both cause the contract to terminate, the Court is not convinced that the cases defendants cite involving rescission of contracts are controlling in determining whether plaintiffs' forfeiture of the real estate contract precludes plaintiffs from any additional relief. A major distinction between the two types of relief is that forfeiture does not require that the parties be restored to the status quo which is a major element of rescission. *See Garnatz v. Stifel, Nicolaus & Co.,* 559 F.2d 1357 (8th Cir.1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978). The Iowa Supreme Court has apparently recognized this distinction when it listed forfeiture and rescission as separate and independent remedies available to a vendor in the event of a vendee's default. *Abodeely v. Cavras,* 221 N.W.2d 494, 497 (Iowa 1974); *see also First Nat'l Bank of Shenandoah v. LaBarron,* 201 Iowa 853, 208 N.W. 364 (1926). Moreover, the fact that the parties are to be restored to the same position as they were in prior to entering a contractual relationship appears to be an important factor in cases which have barred a vendor from pursuing additional claims. *See Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 303 F.2d 527 (10th Cir.1962); *Young v. Main,* 72 F.2d 640 (8th Cir.1934); *Albert Lea Foundry Co. v. Iowa Sav. Bank,* 21 F.2d 515 (8th Cir.1927); *Bain v. Ullerich,* 189 Iowa 149, 177 N.W. 61 (1920). In the case before this Court, it is clear that by reason of the forfeiture the plaintiffs were not placed in the same position that they were in prior to entering this transaction with defendants. When the dairy farm was returned to plaintiffs, it was no longer operational as it was when plaintiffs sold it.

■ Nevertheless, the Court recognizes that forfeiting a real estate contract does preclude actions on the contract. Where a vendor exercises a right of forfeiture against a defaulting vendee, the liability of the latter for the unpaid purchase price is extinguished and, therefore, a vendor may not proceed on a theory based on affirmance of the contract by suing for damages for breach of contract or for specific performance since they are considered inconsistent remedies in which the vendor is precluded from pursuing. *Abodeely v. Cavras, supra,* at 498. Thus, the Iowa Supreme Court has found that where a vendor forfeited a real estate contract, he could not recover on a separate note and mortgage which were considered "additional security" for the real estate transaction though the parties agreed that even if the vendor exercised his right to forfeiture or foreclosure on the real estate contracts, payments on the notes would still be required. *Gray v. Bowers,* 332 N.W.2d 323 (Iowa 1983).

■ In reviewing plaintiffs' claims, the Court finds that their assertion of a cause of action based on breach of the indemnity agreement is a claim on the contract and that under *Gray v. Bowers,* plaintiffs are barred from prevailing on it. However, the Court views plaintiffs' other claims: fraud, RICO, negligent misrepresentations, breach of contract against defendant bank, and tortious interference with contract against defendant bank as not being actions on the contract, and are therefore not barred by plaintiffs' forfeiture of the real estate contract to the extent they do not allow plaintiffs double recovery. Thus, this Court finds that forfeiture of the real estate contracts only precludes plaintiffs' claim based on breach of an indemnity agreement.

IV. Defendant First National Bank of Missouri Valley.

This Court notes that Defendant First National Bank of Missouri Valley was not part of either the motion to dismiss or the motion for summary judgment. However, with respect to defendants' motion to dismiss, this Court finds that its sustaining of defendants'—except for Defendant First National Bank of Missouri Valley—motion

874

to dismiss plaintiffs' security claims shall also be considered a dismissal of plaintiffs' securities claims against Defendant First National Bank of Missouri Valley.

IT IS THEREFORE ORDERED that defendants' motion to dismiss be granted to the extent that plaintiffs' claims based on the Securities Act of 1933, the Securities Exchange Act of 1934, and the Iowa Uniform Securities Act be dismissed. Plaintiffs claim based on RICO shall be dismissed unless plaintiffs amend their complaint within twenty days of this Order to comply with the pleading requirements of RICO as discussed above.

IT IS FURTHER ORDERED that defendants' motion for summary judgment be granted only to the extent that plaintiffs' claim of breach of indemnity agreement be dismissed.